United States District Court
~~Southern District of Texas~~

**ENTERED**
June 09, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT     SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Hadeel Alubaidy, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | Civil Action H-19-4398 |
| | § | |
| Flexsteel Pipeline Technologies, Inc., | § | |
| | § | |
| Defendant. | § | |

## Opinion on Summary Judgment

1.     *Background.*

Flexsteel Pipeline Technologies, Inc., is a Houston-based manufacturer of spooled pipe solution that it markets and sells worldwide. Flexsteel divided its sales division into two groups: North American and international.

On October 1, 2012, Flexsteel hired Hadeel Alubaidy as an international sales coordinator, a support role in the international sales group. She was an at-will employee and her starting salary was $57,000.

As international sales coordinator, Alubaidy was responsible for preparing bid packages, replying to leads, answering inquiries, preparing reports, and assisting with the pre-qualification process. On January 27, 2014, Flexsteel changed Alubaidy's title to international sales representative. Alubaidy's salary increased to $62,500, but her job responsibilities did not change.

After her title changed, Flexsteel invited Alubaidy to participate in its 2014 compensation plan. Under the 2014 plan, invited employees can earn bonuses if they achieved certain levels of performance. Participants received bonuses for sales that were closed and delivered in the 2014 plan year, January 1-December 1. Flexsteel was not required to notify participants if it decided to suspend or modify the 2014 plan.

Alubaidy was also invited to participate in the 2015 compensation plan. The 2015 plan had the same terms and conditions as the 2014 plan. Alubaidy signed the 2015 plan, indicating that she understood its contents.

In December 2015, Flexsteel closed the sale on a large project in the Netherlands. Alubaidy served as the point of contact for the project, and Don Crawford, senior vice president of operations and sales, managed the negotiations, meetings, and technical sales discussions. The Netherlands project closed in December 2015, but the materials were not delivered until 2016. No employee received a commission for the Netherlands project in 2015.

Flexsteel decided to discontinue the compensation plan in 2016 because of financial trouble and its overall ineffectiveness. Alubaidy did not receive a compensation plan invitation in 2016.

Alubaidy believed Flexsteel owed her a commission for her work on the Netherlands project. In December 2016, Alubaidy met with Crawford to discuss the commission payment. She also expressed that she believed that the male sales representatives in the North American sales group were paid more. Crawford later testified that sales representatives in the North American sales group were assigned to different customer bases, reported to different managers, and managed different volumes of work. He also testified that they "have extensive experience, education, and technical abilities," and can interface "with customers at high levels."

On July 26, 2017, Crawford met with Alubaidy and told her that Flexsteel had mistakenly not assigned her a standard performance-based bonus percentage for 2016 or 2017. He offered her a one-time bonus of $30,000 contingent on her release of all claims she may have against Flexsteel. Crawford also explained that Alubaidy's responsibilities did not match her job title – they aligned more with "International Business Sales Support" instead of "International Sales Representative." Crawford offered Alubaidy a job realignment with a raise to $69,953.31, but it did not require a change in supervisor or transfer. The offer expired on August 2, 2017.

On August 7, 2017, Alubaidy was given additional time to consider the offers. On October 18, 2017, Crawford increased the bonus offer to $44,000; it expired at

noon on October 20, 2017. Neither bonus offer had been contingent on Alubaidy's acceptance of the job realignment. Alubaidy rejected the bonus offer at noon on October 20, 2017. She said that she felt discriminated against and was not being compensated equally or treated fairly. This was the first time Alubaidy had told Flexsteel that she believed she was unfairly treated or compensated.

Flexsteel conducted an investigation into Alubaidy's claims. On November 3, 2017, Flexsteel told Aluabidy that it was unable to substantiate her claims. The parties attempted to mediate the claims but were unsuccessful.

On May 11, 2018, Alubaidy resigned.

2. *Wage Discrimination.*

To establish a prima facie case of wage discrimination, Alubaidy must show that she: (a) is a member of a protected class; (b) was qualified for the position; and (c) "was paid less than a non-member for working substantially the same responsibility," thus making them "nearly identical."[1] Employees with different responsibilities, different supervisors, or different capabilities are not "nearly identical."[2]

Alubaidy is in a protected class. Her qualifications as an international sales representative are not disputed, but she did not identify comparable employees for her wage discrimination claim. The male sales representatives she compares herself to are not "nearly identical" because they work in the North American sales group. Crawford had testified that the North American sales representatives are assigned to different customer bases, reported to different managers, and managed different volumes of work. They also have "extensive experience, education, technical abilities," and can interface "with customers at high levels." Alubaidy's responsibilities as a sales representative in the international sales group were different from the responsibilities of sales representatives in the North American sales group. Because Alubaidy does not identify

---

[1] *Baderrow v. REJ Properties, Inc.*, 974 F.3d 610, 617 (5th Cir. 2020).

[2] *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

a "nearly identical" employee outside of her protected class who is paid more, her wage discrimination claim fails.

3.    *Sex Discrimination.*

To establish a prima facie case for sex discrimination, Alubaidy must show that: (a) she is a member of a protected class; (b) she was qualified for her position; (c) she suffered an adverse employment action; and (d) others similarly situated but outside of a protected class were treated more favorably.[3]

If there is no adverse employment action, Alubaidy may show constructive discharge by offering evidence that Flexsteel made her working conditions so intolerable that she had no choice but to resign.[4]

Alubaidy belongs to a protected class and her qualifications are not disputed. The question is whether she experienced an adverse employment action.

The realigned international business sales support role is not an adverse employment action. The offer to realign Alubaidy's title did not reduce her responsibilities and came with a raise. The one-time bonus, aimed to remedy the lack of a standard performance-based bonus percentage in 2016 and 2017, was not contingent on accepting the realigned title. Alubaidy voluntarily resigned from Flexsteel and was not constructively discharged. She kept her job and was offered a change in title, received a raise in salary, and her job responsibilities did not change. She also was not badgered, harassed or humiliated. Alubaidy's working conditions were not so horrible that she was forced to resign.

Alubaidy cannot show that a similarly situated male was treated differently. The sales representative position in the North American sales group is not comparable to Alubaidy's position. Because Aluabidy did not experience an adverse employment action and was not disparately treated, her sex discrimination claim fails.

---

[3]*Alvarado v.Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007).

[4]*Young v. Southwestern Sav. & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir.1975) .

4.    *Retaliation.*

To succeed on a claim for retaliation, Alubaidy must show that: (a) she engaged in a protected activity; (b) she suffered an adverse employment action; and (c) a causal connection exists between the two.[5]

It is clear that Alubaidy engaged in a protected activity when she complained about unfair treatment. Albaidy argues that Flexsteel's decision not to re-offer the bonus was an adverse employment action, but Flexsteel is not obliged to retender an offer once it was rejected. This is not an adverse employment action.

Alubaidy's voluntary resignation was not a constructive discharge. No causal connection exists between the alleged adverse employment action and the protected activity. There is no evidence beyond Alubaidy's subjective belief that the two are connected. Alubaidy's retaliation claim fails.

5.    *Breach of Contract.*

To succeed on a breach of contract claim, Alubaidy must show that: (a) a valid contract exists; (b) she performed under the contract; (c) Flexsteel breached; and (d) she was damaged.[6]

Alubaidy argues that Flexsteel purposefully did not deliver the product for the Netherlands project before the end of 2015 to avoid paying the participants' commissions. She offers no evidence to support this allegation. Alubaidy further argues that Flexsteel cannot enforce a condition precedent, of which it was in control. She ignores that the deal was closed in December 2015 but acknowledges that it takes months to ship a product overseas.

The 2015 plan's contract terms are unambiguous: the participant must close the deal, and the product must be delivered before the end of the year. Alubaidy signed

---

[5]*Davis v. Fort Bend*, 765 F. 3 d 480, 489–90 (5th Cir. 2014).

[6]*Constr. Fin. Services, Inc. v. Chicago Title Ins. Co.*, No 04-12-00375-CV, 2013 WL 1846613, at *17 (Tex. App.—San Antonio May 1, 2013, pet. denied).

the agreement, indicating she understood its terms. The Netherlands project closed in 2015, but the product was not delivered until 2016. Her breach of contract claim fails.

6.      *Equal Pay Act.*

To succeed on a claim under the Equal Pay Act, Alubaidy must show: (a) Flexsteel is subject to the Equal Pay Act; (b) she performed work in a position requiring equal skill, effort, and responsibility to comparable male employees; and (c) she was paid less than a comparable male employee. [7]

Alubaidy cannot show that she worked in a position requiring equal skill, effort, and responsibility. She says that male sales representatives in the North American sales group are proper comparisons, but they are not. They are assigned to different customer bases and manage a more demanding workload than Alubaidy. They also "have extensive experience, education, and technical abilities," and can interface "with customers at high levels." Alubaidy's skills and responsibilities are not equal to those of the male North American sales representative.

Alubaidy also cannot show that Flexsteel's reasons that she is payed less than the male sales representatives in the North American sales group are pretext for discrimination. Her claim under the Equal Pay Act fails.

7.      *Intentional Infliction of Emotional Distress.*

Flexsteel argues that Alubaidy's intentional infliction of emotional distress is preempted by her gender discrimination and Equal Pay Act claims. Flexsteel says that intentional infliction of emotional distress is a gap filler tort and rests on her discrimination and retaliation claims. Because Alubaidy did not respond to this argument, she has abandoned the intentional infliction of emotional stress claim.

---

[7]*Badgerow*, 974 F3d. At 617.

8.    *Conclusion.*

Hadeel Alubaidy takes nothing from Flexsteel Pipeline Technologies, Inc.

Signed on June ___9___, 2021, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge